CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS   FILED

STATE OF LOUISIANA                               2019 JUL -3 PM 2:06

NO. 2019-7027    DIVISION           DOCKET NO.

TAMLA PIERRE and CHRIS PIERRE

VERSUS

MYRIAD GENETICS, INC and GREGORY ABEL

FILED: _____    _____
                                      DEPUTY CLERK

## PETITION FOR DAMAGES

NOW COME Plaintiffs, Tamla Pierre and Chris Pierre, natural persons of the full age of majority and residents of Orleans Parish, through undersigned counsel, who respectfully aver:

1.

Made defendants:

A.) Myraid Genetics, Inc. ("Myriad"), a foreign corporation with its principle place of business at 320 Wakara Way, Salt Lake City, UT 84108

B.) Gregory Abel, a person of the full age of majority and a resident of Jefferson Parish, Louisiana.

2.

Defendants are liable jointly, divisibly and *in solido* to the Plaintiffs for all contractual and delictual damages reasonable in the factual and legal premises.

3.

Plaintiff, Tamla Pierre, is a nurse practitioner practicing at A Women's Place medical clinic located at 9954 Lake Forest Blvd #10, New Orleans, LA 70127.

4.

Gregory Abel is a salesman for Myriad.

5.

As part of his job duties for Myriad, Gregory Abel called on A Women's Place as one of his accounts.

6.

Previously, Myriad had a patent on the BRCA cancer gene meaning that Myriad was the only company that could test women for the BRCA gene.

16.

Although the Myriad BRCA test classified this Gene Mutation as having "uncertain clinical significance," Pierre was told by Gregory Abel that she was in fact "BRCA positive."

17.

Due to her "positive" BRCA test result, Abel recommended to Tamla Pierre that she needed to consider a double mastectomy.

18.

Because Tamla Pierre had a family history of cancer, and because of Abel's recommendation to consider a double mastectomy in light of her "positive" BRCA test result, Tamla Pierre underwent a double mastectomy on May 8, 2017.

19.

Tamla Pierre had complications from the double mastectomy.

20.

Tam Pierre was planning to have her ovaries removed in 2019.

21.

On May 1, 2019, Tamla Pierre received an "updated" BRCA test from Myriad that stated that although she still has the Gene Mutation, this particular Gene Mutation "has been reclassified to a variant of no clinical significance."

22.

Upon learning that she unnecessarily had a mastectomy and that her "positive" BRCA test was now of no clinical significance, Pierre called Gregory Abel.

23.

Mr. Abel stated that if anything was done improperly, the improper acts were undertaken by Ms. Pierre's treating oncologist.

24.

On May 1, 2019, Tamla Pierre received an updated BRCA test from her mother that stated that her mother's 2012 BRCA test results were also being changed by Myriad.

25.

The Defendants had a duty to Plaintiff to accurately test for the BRCA gene mutations, to appropriately interpret the test results, and to appropriately report the test results in order to properly inform Pierre of the consequences of the test results.

26.

As a worldwide leader and preeminent expert in the field of BRCA testing, Myriad knew or should have known that Ms. Pierre's Gene Mutation had no clinical significance prior to February 2017.

27.

Myriad had the duty to know the clinical significance, or lack thereof, of Ms. Pierre's Gene Mutation prior to February 2017.

28.

Myriad had the duty to surveil the scientific literature to keep abreast of the relevant scientific body of knowledge speaking to the clinical significance, or lack thereof, of Ms. Pierre's genetic mutation or variant prior to February 2017.

29.

The Defendants breached their duties to the Plaintiff.

30.

Myriad solely controlled the body of knowledge regarding the BRCA test and the BRCA gene mutations until 2013.

31.

Myriad knew or should have known the clinical consequences of a "positive" BRCA test if the patient had a family history of breast cancer.

32.

Myriad, through Abel, unnecessarily and negligently reported to Pierre that, because of her Gene Mutation, she needed to consider a double mastectomy.

33.

Myriad failed to train its employee, Abel, to properly read and interpret the BRCA test.

34.

Myriad failed to train its employee, Abel, to the extent that it failed to ensure that Abel knew that Ms. Pierre's Gene Mutation had no clinical significance as of February 2017.

35.

Had Abel been properly trained, he would not have told Pierre in 2017 that she was "BRCA positive" and needed to consider a double mastectomy.

36.

Abel was negligent in his reporting to Pierre that she was "BRCA positive" and needed to consider a double mastectomy as he knew or should have known that Pierre did not have a gene mutation of clinic significance.

37.

Defendants are liable to Plaintiffs for actions/inactions including, but not limited to:

a. Improper investigation;

b. Improper research;

c. Failure to properly report the test results;

d. Failure to possess or act with the requisite diligence, skill and competence;

e. Failure to communicate;

f. Failure to sufficiently advise or counsel Tamla Pierre;

g. Failure to request or obtain papers and information reasonably necessary;

h. Failure to act reasonably to avoid error;

i. Failure to reasonably consult with Tamla Pierre about the means by which her objectives are to be accomplished;

j. Failure to sufficiently train, oversee, or supervise employees;

k. Any and all other breaches of duty to be proven.

37.

The actions and/or inactions of the Defendants caused damages to Tamla Pierre including, but not limited to:

a. Unnecessary double mastectomy and complications therefrom;

b. Physical pain and suffering;

c. Mental pain and suffering;

d. Medical costs;

e. Lost wages;

f. Other damages to be discovered.

38.

Chris Pierre, husband of Tamla Pierre, brings a claim for loss of consortium.

WHEREFORE, Plaintiffs pray that Defendants be duly cited and served copies of the above and foregoing, be made to timely appear and answer same, and after all due proceedings be had, there be judgment herein in favor of Plaintiffs and against Defendants, holding Defendants liable jointly, divisibly, and *in solido* to Plaintiff for all damages as are reasonable in the factual and legal premises, together with interest thereon from the date of judicial demand until paid, for Defendants to bear all costs of these proceedings, and for all further general, legal and equitable relieve available in the premises.

Respectfully submitted,

_____
LAWRENCE J. CENTOLA, III (#27402)
JASON Z. LANDRY (#33932)
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Telephone: (504) 581-9065
Fax: (504) 581-7635
Email: lcentola@mbfirm.com
jzl@mbfirm.com

*Attorneys for Plaintiffs*

**PLEASE SERVE:**

Gregory Abel
1616 Mason Smith Ave
Metairie, LA 70003

Myriad Genetics, Inc.
Through Louisiana the long arm statute:
320 Wakara Way
Salt Lake City, UT 84108

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA